592 So.2d 671 (1992)
In re Petition for REMOVAL OF A CHIEF JUDGE.
No. 79206.
Supreme Court of Florida.
January 17, 1992.
William D. Brinton, Jacksonville, on behalf of members in good standing of The Florida Bar practicing law in the Fourth Judicial Circuit, and Benjamin H. Hill III, President, Tampa, and John F. Harkness, Jr., Executive Director, Tallahassee, of The Florida Bar and by the Executive Committee on behalf of the Board of Governors of The Florida Bar, for petitioner.
Samuel S. Jacobson of Datz, Jacobson & Lembcke, P.A., Jacksonville, for respondent.
PER CURIAM.
We have before us a petition to remove Judge John E. Santora from the office of Chief Judge of Florida's Fourth Judicial Circuit.[1] We have jurisdiction. Art. V, § 2(a), Fla. Const.; Fla.R.Jud.Admin. 2.050(c). We grant the petition and order his removal as Chief Judge.
On December 22, 1991, The Florida Times-Union, a newspaper of general circulation in the Fourth Judicial Circuit, published remarks made by Judge Santora to a Times-Union reporter in an interview. The published remarks concern interracial dating and marriage, the effect of integration on crime in the public schools, the provocative manner of dress of female students, the prevalence of blacks on welfare and in the criminal justice system, and the propriety of making racial slurs and telling racial jokes in private. The full text of the published statements is appended to this opinion. Following publication of the article, *672 numerous individuals and groups called for Judge Santora to resign as Chief Judge and to relinquish his circuit judgeship.
Based on the newspaper article, petitioners, who consist of a group of twenty members of The Florida Bar,[2] allege the following:
5. Judge Santora's conduct violated Canons 2, 4 and 5 of the Code of Judicial Conduct.
6. Our Judicial system requires public support and confidence for its existence. Public support in turn depends upon judicial credibility, established only by a clear appearance of judicial integrity and impartiality.
7. Judge Santora's public statements have eroded public confidence in the judiciary and cast doubt on his impartiality. They also have caused growing social and racial turmoil in this community. These tensions seriously threaten the effective functioning of the judiciary.
Petitioners urge this Court to act in its administrative supervisory capacity and remove Judge Santora from the office of Chief Judge.
Judge Santora does not deny giving the interview, but rather claims that the newspaper account gives an incomplete explanation of the circumstances under which the interview was given and asserts that the published statements do not accurately reflect his personal beliefs. He notes that he has apologized publicly for the comments and asserts that he has always been and will remain an impartial Chief Judge.[3]
The sole issue we decide today is whether Judge Santora's published statements have significantly compromised his ability to function effectively as Chief Judge in administering the courts of the Fourth Circuit.
The position of Chief Judge is especially important, for the Chief Judge serves as both the chief administrative officer and chief judicial officer within the circuit. See Fla.R.Jud.Admin. 2.050(b). In this capacity, he or she must work effectively with the judiciary, court employees, and the community at large. In his or her dealings with the public in particular, the Chief Judge is perceived as a prime representative of not only the judiciary but the entire system of justice. The position thus is a highly responsible one, requiring the utmost in sensitivity and discretion in the conduct of those who hold it. The actions of the Chief Judge, both professional and personal, must be consistent with the highest ideals embodied by our law.
Because Judge Santora's candid public statements, freely given to a newspaper reporter, have been read by a significant portion of the community as affirmatively embracing and endorsing discriminatory stereotypes that are inimical to the laws of this state, the interests of the judiciary, and the oft-stated policies of this Court, we conclude that his actions have significantly eroded his ability to work effectively with all segments of the community in administering the courts within the Fourth Judicial Circuit in his present office as Chief Judge. We recognize that the residents of the circuit are sharply divided over this issue. It was Judge Santora's actions, however, that led to this divisiveness. To ensure the orderly operation of the courts, it is necessary that someone other than the judge whose comments precipitated this controversy serve as Chief Judge. Accordingly, we order that Judge John E. Santora, Jr. be removed as Chief Judge of the Fourth Judicial Circuit,[4] effective upon filing of this opinion, and that a new Chief Judge be selected pursuant to Rule of Judicial Administration *673 2.050. In the interim, the duties of the office of Chief Judge shall be performed by the circuit judge within the Fourth Circuit having the longest continuous service as judge or by one so designated by that judge.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES and KOGAN, JJ., concur.
HARDING, J., recused.

APPENDIX

 The full text of Judge Santora's published statements is as
follows:
 "Question: [Santora had just condemned a recent cross-burning
and racial slurs to a Northside black family.] But at the same
time, you trace a lot of these [crime] problems back to
integration... . You have the feeling that ...
 "Santora: No, I don't. The people that were doing this
[terrorizing a black family] were like you; they grew up with
them. As a general rule, they are young people. But, you see, the
blacks have come into the school system, which they never were in
there before and it was a step forward for them, yet they
couldn't cope with it. Because they had a chip on their shoulder
 I'm talking about the average  when they went there. And they
started the fights, they started the gangs. And the whites
retaliated, and they did the same thing. But I never heard, never
heard of a weapon when I went to school... . The three years I
was in high school, I never saw a fight, not one, much less
somebody with a knife, or a gun or a stick or a club... . I
never heard a teacher sassed, much less raped. I never saw a girl
mistreated by a boy, much less raped. Ever. I never saw a guy hit
a girl, or another guy... . The teacher said `frog,' we jumped.
If you didn't, you'd get your butt beat. And we knew it.
 "But now, it's a different ballgame... . Girls are wearing
panty hose and miniskirts that would make a guy my age chase them
down the hallway. I mean, I never saw anything like that when I
was in high school. They look 20 years old, not 15. And that's
also causing the blacks, the blacks are playing with those white
girls, with the white girls' consent.
 ... .
 "Question: Are your thoughts that whites are somehow different?
 "Santora: When you're trying a case, it doesn't make a
difference what your color is.
 "Question: What about when you're not trying a case?
 "Santora: You mean my private, personal thoughts? ... I would
not date a black girl. I would not take one home, my mother would
kill me. I wouldn't mistreat one. I would not want my children to
marry a black or an Asian or a Chinese or a Puerto Rican. I would
not want them to. And they know that. I have friends who are
black, we all do. You have them in your workplace; I've got 'em
in my workplace. The best judicial assistant in this building,
one of the best, is a black girl. One of the best, without a
doubt. But that's unusual. One of the best judges is black. One
of the worst is black. I think that there is a difference between
a lot of them that they can't overcome. And it's not all of it
their fault. It's the fault of their mothers and their daddies
and their ancestors. And our fault. We have been too good to
them. We, the United States Congress. Because they make more
money by staying home on welfare than they do working. And you
can't blame 'em. Why give up $1,500 a month when you can't make
but $800 working.
 "Question: You see that as a black issue, not white?
 "Santora: Oh yeah, we have whites doing it, but most of them
are black. We talk about ... why is that 20 percent of the
population is black and 45 percent of the prisoners are black.
That's because, goddamnit, they're the ones committing the
crimes. As I told you earlier, you've got more of those folks
involved in drugs than whites, as far as felonies are concerned.
I don't know how many of them are using,
*674 we have no way of knowing. Every day the Times-Union reports
another killing on the Northside. Every day. So they are involved
in crime. That's the reason. How do we stop them from being
involved in crime? We give them a mama and a daddy to start off
with. We give them a home with love and affection in to start off
with. But how do we go about doing that? It's impossible, if
that's what they need.
 "Question: ... We've talked to various black leaders in the
community, and some white leaders... . They're saying: `We've
never heard anything conscious or overt, but there is probably
some subconscious feeling that a black life is worth less than a
white life.'
 "Santora: You have to be so careful around these folks because
they've got their feelings on their shoulder and probably with
good cause. And they become offended. Something you don't mean to
be offensive. But you have to be careful because they are so
easily offended by something that you consider to be, uh, for
example: I can call a white guy, `hey boy, watch out.' If I said
that to a black man, he'd be offended. For the reason that they
used to call, no matter how old you were, used to call them
`boys.' That was wrong and we have corrected that. That's where,
`Yeah, man' comes from. `Hey, man, you got a smoke on ya?' `Hey
man, let's go to the store.' You know, getting away from that
`boy.'
 ... .
 "Question: On the one hand, it sounds as if you're saying your
racial attitudes are no one's business. But then on the other
hand, you have a pretty weighty job, a pretty weighty position.
 "Santora: My attitude I told you was that I would never
mistreat or judge a case on somebody's color or ethnic
background. Not ever. Never have, and I never will.
 "Question: And personal feelings don't have anything to do with
your ...
 "Santora: Absolutely not... . Every judge has personal
feelings. The instructions that we give to a jury: We recognize
when you take that seat on the jury box, that all of us have our
own peculiarities, biases and prejudices. And what we want to do
is find out about your prejudices to see if it would interfere
with your ability to be fair in this case... . We're asking
jurors that. Well, judges are the same way. What we say to them
is: All of us have these peculiarities. All of us. That's the
reason you have moderates, liberals and conservatives. They're
all fair or try to be fair, but they have philosophies which are
different. Some people believe in abortion, some do not. Some
people think that the right to life is, uh, and I concur. I think
the woman should have the exclusive authority to decide for
herself, not some man telling her, `You can or you cannot abort.'
 "Question: ... So, racism can exist in society but it can
disappear in the courtroom?
 "Santora: Absolutely. I hope so. As far as I am concerned, yes.
You don't think these black judges are going to try a case where
a black's on one side and a white's on the other, are going to
rule in the black's favor all the time just because he happens to
be black, do you?
 ... .
 "Question: I'm just trying to reconcile whether you would
describe yourself as prejudiced, and whether that would impact a
case.
 "Santora: I do not, and if you call me prejudiced, I'm going to
sue you. (chuckle) I'm teasing, of course. But of course not. No
one would like for anybody to think that they're prejudiced. But
I reiterate: We all have our prejudices. But in a courtroom,
there is no such thing as prejudice against a litigant or a
lawyer. Well, I take that back. There is. You have lawyers who
will not prepare themselves, and they are a disgrace to the
profession, and they are not representing their client. Day in
and day out, and judges do become prejudiced against that lawyer,
no matter what color he or she is because they're no
professional.
 ... .
*675 "Question: I just want to make sure that, by the time I leave,
we have a similar understanding.
 "Santora: ... I reiterate firmly, that I have never, ever,
ever, judged a case on a person's ethnic background, color or
creed, or religion or anything else. You did say, `Well, somehow
or other, I got the feeling you had some personal thoughts about
it.' Well, of course I do. But whatever my personal biases or
prejudices are, it does not enter the courtroom.
 "And my personal prejudices are: I would not date any of the
aforementioned. I certainly wouldn't marry any of them. Not that
I think that the Caucasian is that much better, but I just happen
to be a Caucasian, and that's who I'd want to mix with. And
that's who I'd want to marry, which I did, an Irish girl. So that
is a prejudice. I have seen many pretty girls of the
aforementioned ethnic backgrounds.
 "True, we had criminal problems long before integration. We
didn't have the school problems that we have before integration.
 "Question: See, that to me connotes ...
 "Santora: Oh, so you look at one group of people who have
stirred up a lot of trouble, and that's prejudice? All right,
then I'm prejudiced against people who are in prison for rape and
murder and assault and robbery... . My prejudice goes to the
whites, and the browns and the greens and the purples and the
reds, as well as the blacks  who hurt people and steal from
people.
 "Question: ... But within the schools, the problem belongs to
whom?
 "Santora: Talk to schoolteachers, as I do. Talk to anybody in
the school system, as I do. As recently as last night. How many
young Caucasian teachers, female, do you think have quit because
they couldn't tolerate  those hoodlums have made them quit 
because they couldn't tolerate the danger. That's a fact.
 "Question: The danger from?
 "Santora: The young, teenage blacks. See how many people are in
these private, ecclesiastical schools in order to get away from
that. Those who can afford it, their children are in University
Christian or in Episcopal or Bolles. They also have blacks at
Bolles, but those blacks are disciplined. They don't molest
teachers, they don't rape... .
 ... .
 "Question: What if a person in private life  Judge John Smith
 outside of the courtroom uses racial slurs?
 "Santora: I think that people, including judges, have told
stories ... have told jokes that they wouldn't tell in the
company of the ethnic minority involved in the joke. But that
person who tells that joke, even when it includes a racial slur,
is not intended by him to be a racial slur but was part of the
story as he heard it... . You're saying: So the judge is fair
in the courtroom and he would never think of using a racial slur.
But does he have the right to do it in the privacy of his own
home? Sure he does... . You're saying because he uses a racial
slur in the privacy of his own home means he's not fit to be a
judge?
 "Question: I don't know. I'm asking.
 "Santora: Well, of course that's ridiculous.
 "Question: ... OK. Then where do you draw the line?
 "Santora: ... I don't know how to make it any clearer. This
is not a perfect world. We are not perfect people. We do not have
perfect manners. Our thoughts are not always pure. We covet, we
sexually harass, we curse, we use racial slurs and ethnic
inappropriate remarks, particularly when we're young and in
school. And as you get older, you think that you become more
mature and you get away from those things, but sometimes they
slip out. Particularly if you are in the privacy of your home
with friends that you have invited there, and they are in the
process of telling funny stories, that they call funny stories,
and included in that is a racial slur or an ethnic word that
others would find inappropriate. That doesn't mean that that
person
*676 is a bigot, or doesn't mean that that person is incapable of
holding a position of trust or as a judge.
 "Do you think that if a doctor tells an ethnic joke, that he's
not going to perform surgery on a bleeding black victim? ...
He's going to do the best he can for that patient because of his
oath. He's there to protect life. The same way with judges.
They're there also to protect life and rights and property. They
don't care whether the person is black, green or purple. And the
black lawyer and the black judge is the same way. He doesn't
care. He's going to honor his oath and try the case based upon
the facts and the evidence, whether they're black, white, green
or purple. And I'll bet my last dollar on it: The three black
judges we have would do that. And the whites would do that. And
the males, and the females. All of them, they would do that."
 ... .
A Conversation with Judge John Santora Jr., The Florida-Times
Union, Dec. 22, 1991, at A-1, A-8, A-9 (ellipses in original).

NOTES
[1] The issue of Judge Santora's fitness to serve as circuit judge is not before us.
[2] The petitioners include three past presidents of The Florida Bar, the current president of the Jacksonville Bar Association, the president-elect of the Jacksonville Bar Association, six past presidents of the Jacksonville Bar Association, the current president of the Clay County Bar Association, two members of The Board of Governors of The Florida Bar, and two members of the Board of Governors of the Jacksonville Bar Association, among others.
[3] In his response to the instant petition, Judge Santora raises no issue of material fact requiring a hearing.
[4] We do not address Judge Santora's fitness to serve as circuit judge.