840 So.2d 1008 (2003)
MEDIA GENERAL CONVERGENCE, INC., et al., Petitioners,
v.
CHIEF JUDGE OF the THIRTEENTH JUDICIAL CIRCUIT, Respondent.
Charles J. Crist, Jr., et al., Petitioners,
v.
Chief Judge of the Thirteenth Judicial Circuit, Respondent.
Nos. SC01-1396, SC01-1398.
Supreme Court of Florida.
February 13, 2003.
*1009 Gregg D. Thomas, Carol Jean LoCicero and James J. McGuire of Holland & Knight LLP, Tampa, FL; Thomas E. Warner, Solicitor General, and T. Kent Wetherell, II, Richard A. Hixson, and Matthew J. Conigliaro, Deputy Solicitors General, Tallahassee, FL; and Patricia R. Gleason, General Counsel, Office of the Attorney General, Tallahassee, FL, for Petitioners.
*1010 C. Steven Yerrid and Richard C. Alvarez of the Yerrid Law Firm, Special Counsel to the Office of the Chief Judge, Tampa, FL, for Respondent.
W. Robert Vezina, III, Mary Piccard Vance, and Frederick J. Springer of Vezina, Lawrence & Piscitelli, P.A., Tallahassee, FL; and W. Dexter Douglass and Thomas P. Crapps of the Douglass Law Firm, P.A., Tallahassee, FL, for the Florida Conference of Circuit Court Judges, Amicus Curiae.
PER CURIAM.
We have for review a decision of the Second District Court of Appeal, which certified a question to be of great public importance. See Media Gen. Convergence, Inc. v. Chief Judge of the Thirteenth Judicial Circuit, 794 So.2d 631, 636 (Fla. 2d DCA 2001).[1] We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. Because the Second District's certified question is broader than the actual dispute in this case, we rephrase and divide the question to address the documents that were the subject of the dispute in this case:
I. WHETHER DOCUMENTS RECEIVED OR MADE BY THE CHIEF JUDGE REGARDING COMPLAINTS OF SEXUAL HARASSMENT OR SEXUALLY INAPPROPRIATE BEHAVIOR BY A JUDGE CONSTITUTE PUBLIC RECORDS?
II. IF THE DOCUMENTS DO CONSTITUTE PUBLIC RECORDS, ARE THE DOCUMENTS OTHERWISE EXEMPT FROM DISCLOSURE AFTER THE JUDICIAL QUALIFICATIONS COMMISSION DETERMINES THAT PROBABLE CAUSE EXISTS?
For the reasons that follow, we answer the first rephrased certified question in the affirmative, and the second rephrased certified question in the negative. Accordingly, for the reasons stated in this opinion, we quash the Second District's decision and remand for further proceedings consistent with this opinion.

I.
Petitioners Media General Convergence, Inc., and Media General Operations, Inc., were, respectively, the owner of television station NewsChannel 8/WFLA-TV ("WFLA") and the publisher of The Tampa Tribune newspaper ("the Tribune").[2] This review proceeding involves requests WFLA and the Tribune made to Judge F. Dennis Alvarez, Chief Judge of the Thirteenth Judicial Circuit,[3] for access to records involving "information about complaints of sexual harassment and/or sexually inappropriate comments or behavior made against Hillsborough Circuit Judge Edward Ward." These records requests will be referred to as the "Judge Ward records."
Although Chief Judge Alvarez did not produce any records to the petitioners and *1011 no records were produced under seal to the Second District, we are able to determine additional material facts based on the appendices filed by both parties before the Second District and made a part of the record in this case. These appendices include records supplied by the Judicial Qualifications Commission ("JQC") to the petitioners.
The records released by the JQC indicate that Chief Judge Alvarez learned of complaints regarding Judge Ward's behavior toward other circuit court judges and judicial assistants, and received information regarding this behavior. The records received or generated by Chief Judge Alvarez include affidavits executed by two judicial assistants regarding behavior by Judge Ward that the judicial assistants considered inappropriate;[4] e-mails between Judge Ward and one of the judicial assistants, as well as e-mails between Judge Ward and another circuit judge; and memoranda by Chief Judge Alvarez's employee memorializing Chief Judge Alvarez's discussions during a meeting with Judge Ward involving the complaints against him and the follow-up meeting with the judicial assistant and the judge for whom she worked.
Some time after the petitioners' initial request for the Judge Ward records, the JQC found probable cause to believe that Judge Ward had sent sexually explicit emails and made inappropriate overtures to two female Hillsborough County Circuit Judges and two female judicial assistants. The JQC filed formal charges against Judge Ward on March 1, 2000, and on that same day, the Tribune renewed its request in writing to Chief Judge Alvarez for "any and all documents and materials relating to complaints and/or allegations of inappropriate conduct" concerning Judge Ward. However, the Tribune did not indicate in its request that the JQC had found probable cause in the Judge Ward case. On March 2, 2000, WFLA requested the Judge Ward records telephonically.
Responding to the requests by separate letters dated March 6, 2000, Chief Judge Alvarez stated that "any records in my custody pertaining to your request have already been furnished to the [JQC] pursuant to its request." Furthermore, Chief Justice Alvarez explained: "It is my understanding that such records will only become public upon their admission into evidence at a subsequent JQC proceeding. It is also my understanding that until such public proceeding, JQC investigatory records remain confidential."
On March 8, 2000, WFLA and the Tribune again wrote to Chief Judge Alvarez, requesting access to
any records, including e-mail correspondence, you, your staff, the Court Administrator, his staff, or Court Communications & Technology Services personnel obtained, received or reviewed and that contain or refer to the text of any e-mail messages among Judge Edward Ward and any of the [people who made complaints regarding Judge Ward's behavior]. Access is also requested to any records, including e-mail messages, between you (or your staff) and any other Hillsborough County Circuit Court Judge, County Court Judge, or court staff member concerning Judge Ward.[5] *1012 Furthermore, WFLA and the Tribune requested that Chief Judge Alvarez retrieve or make copies of the records for review to the extent that he had transferred the records to the JQC.
On that same day, WFLA and the Tribune made a second request for access to the following documents:
any correspondence, electronic correspondence, documents or other records made or received by the Chief Judge's Office or the Court Administrator's Office concerning fraternization, romantic relationships or sexual contact between any Hillsborough County Circuit Court or County Court Judge, and any personnel assigned to any courthouse located in Hillsborough County, whether such personnel are employed by the state of Florida, Hillsborough County, the Hillsborough County Sheriff's Office, or some other private or governmental entity.
These records will be referred to as the "fraternization records." Chief Judge Alvarez denied the request for the fraternization records, explaining that "[t]o the extent that any judicial records you have requested exist, please be advised that such records would be confidential and exempt from public accessibility under Florida Rule of Judicial Administration 2.051(c)(3)(A)."[6]
After Judge Alvarez denied access to both sets of records, WFLA and the Tribune filed a petition for a writ of mandamus in the Second District, seeking an order compelling Chief Judge Alvarez to disclose the requested records.[7] The Second District denied the petition but certified a question of great public importance. See Media Gen. Convergence, 794 So.2d at 636. The Second District majority first explained that whether the documents at issue were public depended on "whether they are `judicial records' within the meaning of Florida Rule of Judicial Procedure 2.051." Id. at 633. The Second District concluded as follows:
By and large, none of the documents requested by the petitioners is a "judicial record" as defined in the rule. The reason has to do with the purely administrative nature of the office of the chief judge. The Florida Constitution, article V, section 2(d), states that the chief judge "shall be responsible for the administrative supervision of the circuit courts and county courts in his circuit." Florida Rule of Judicial Administration 2.050 details the administrative duties of a circuit chief judge. Neither the constitution nor the rule imbues him with authority to supervise the social, romantic or sexual behavior of other judges or, for that matter, of anyone else. Indeed, a chief judge, as such, has no official role in investigating judicial misconduct of any kind. That duty is vested in the Judicial Qualifications Commission, and the chief judge plays no part in its investigative or adjudicatory process. Art. V, § 12, Fla. Const.; Fla. Jud. Qual. *1013 Comm'n R. For the most part, then, the documents requested of Judge Alvarez could not have been made or received by him in his capacity as chief judge pursuant to court rule, law or ordinance, or in connection with the transaction of official business. Simply put, they are not judicial records subject to compulsory public access. Fla. R. Jud. Admin. 2.051(b).
Id. Furthermore, the Second District concluded that to the extent the requested documents constituted public records, the documents would be exempt from disclosure under rule 2.051(c)(8), which exempts from public disclosure records "deemed to be confidential by court rule." Id. at 635.
In a dissenting opinion, Acting Chief Judge Fulmer concluded that the records at issue constituted judicial records subject to public disclosure. See id. at 636 (Fulmer, A.C.J., dissenting). Judge Fulmer explained that the majority construed the public records provisions too narrowly, and that "[t]he administrative responsibilities of a chief judge are not so rigid as to enable this court to predetermine exactly what documents could have been generated by him in all transactions of official business." Id. at 637. Judge Fulmer noted that the majority ignored the established facts in the record that Chief Judge Alvarez did make and receive records while investigating alleged misconduct in his capacity as chief judge. See id. In Judge Fulmer's view, any action that relates to the day-to-day functioning of the courts constitutes the transaction of official business, "whether or not the action taken is expressly listed as a duty in Florida Rule of Judicial Administration 2.050." Id. Further, Judge Fulmer concluded that no exemption applied to render the records in this case confidential. See id. at 637-38.

II.
In answering the rephrased certified questions in this case, we must engage in a two-step analysis. First, we must determine whether the documents sought are, in fact, public records. See Hill v. Prudential Ins. Co., 701 So.2d 1218, 1219 (Fla. 1st DCA 1997). Second, if the documents constitute public records, we must determine whether the documents are exempt from public disclosure as a result of a constitutional, statutory or rule-created exemption.[8]See id. The determination of what constitutes a public record is a question of law entitled to de novo review. See Amos v. Gunn, 84 Fla. 285, 94 So. 615, 634 (1922).
Article I, section 24 of the Florida Constitution, entitled "Access to public records and meetings," provides in pertinent part:
(a) Every person has the right to inspect or copy any public record made or received in connection with the official business of any public body, officer, or employee of the state, or persons acting on their behalf except with respect to records exempted pursuant to this section or specifically made confidential by this Constitution. This section specifically includes the legislative, executive and judicial branches of government....
(Emphasis supplied.) Therefore, pursuant to article I, section 24(a), a document constitutes a public record if it is "made or *1014 received in connection with the official business" of a public employee.
In 1992, this Court adopted rule 2.051 pursuant to the provisions of article I, section 24(d), of the Florida Constitution. See generally In re Amendments to the Fla. Rules of Jud. Admin.Public Access to Jud. Records, 608 So.2d 472 (Fla.1992); art. 1, § 24(d), Fla. Const. The Court explained in adopting rule 2.051:
The amendments to the Florida Rules of Judicial Administration are, in part, designed to clarify the rules on public access to the records of the judicial branch of government and its agencies. In light of Florida's strong public policy in favor of open government, the public is entitled to inspect the records of the judiciary, with certain exemptions.

... In its administrative role, the judiciary is a governmental branch expending public funds and employing government personnel. Thus, records generated while courts are acting in an administrative capacity should be subject to the same standards that govern similar records of other branches of government.
In re Amendments to the Fla. Rules of Jud. Admin., 608 So.2d at 472-73 (emphasis supplied and footnote omitted).
At the time the petitioners in this case filed their requests, rule 2.051 defined "judicial records" as
documents, exhibits in the custody of the clerk, papers, letters, maps, books, tapes, photographs, films, recordings, data processing software or other material created by any entity within the judicial branch, regardless of physical form, characteristics, or means of transmission, that are made or received pursuant to court rule, law or ordinance, or in connection with the transaction of official business by any court or court agency.

Fla. R. Jud. Admin. 2.051(b) (1995) (emphasis supplied).[9] This definition of "judicial records" is virtually identical to the legislative definition of "public records" contained in section 119.011(1), Florida Statutes (2001), insofar as section 119.011(1) defines "public records" as "all documents ... made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency." (Emphasis supplied.)[10]
This Court has never considered the scope of "official business" with regard to members of the judiciary. However, this Court has considered "official business" with regard to public records requests under chapter 119. For example, in the landmark decision Shevin v. Byron, Harless, Schaffer, Reid & Associates, Inc., 379 So.2d 633, 640 (Fla.1980), this Court held "that a public record, for purposes of section 119.011(1), is any material prepared in connection with official agency business which is intended to perpetuate, communicate, or formalize knowledge of some type." Furthermore, this Court has held that personnel records may constitute public *1015 records under chapter 119, and that "[w]hat is kept in personnel files is largely a matter of judgment of the employer, but whatever is so kept is a public record and subject to being published." Michel v. Douglas, 464 So.2d 545, 547 (Fla.1985); see also Mills v. Doyle, 407 So.2d 348, 350 (Fla. 4th DCA 1981) (holding that grievance records of teachers employed by county school board are "public records" under chapter 119).

III.
With these general principles in mind, we analyze the request for records directed to Chief Judge Alvarez regarding "complaints of sexual harassment and/or sexually inappropriate comments or behavior made against Hillsborough Circuit Judge Edward Ward," which we have referred to as the Judge Ward records. As noted above, the threshold question is whether the Judge Ward records were public records, that is, records made or received by Chief Judge Alvarez "in connection with the transaction of official business" under rule 2.051.[11]
Although Chief Judge Alvarez, in his responses to the petitioners, claimed that the requested records were exempt from disclosure, he never contended that the requested records in this case did not constitute public records. The Second District majority, however, determined that the Judge Ward records did not constitute public records. See Media Gen. Convergence, 794 So.2d at 633. The Second District reasoned that Chief Judge Alvarez could not have received the records at issue in connection with the transaction of official business because neither the Florida Constitution nor Florida Rule of Judicial Administration 2.050 explicitly imbues the chief judge with the authority to supervise the social, romantic, or sexual behavior of other judges, or for that matter, anyone else, and further, because the JQC has the exclusive duty to investigate judicial misconduct. See id. In reaching this conclusion, however, the Second District majority too narrowly interpreted when a record is either received or made in connection with the official business of the judiciary.
Article V, section 2(d), of the Florida Constitution provides that "[t]he chief judge [in each circuit] shall be responsible for the administrative supervision of the circuit courts and county courts in his circuit." (Emphasis supplied.) These administrative supervision duties are implemented by rule 2.050. See Fla. R. Jud. Admin. 2.050. This administrative responsibility includes exercising "administrative supervision over all courts within the judicial circuit in the exercise of judicial powers and over the judges and officers of the courts." Fla. R. Jud. Admin. 2.050(b)(2). As the chief judicial officer of the circuit, the chief judge has the responsibility to develop an administrative plan for the "efficient and proper administration of all courts within that circuit." Fla. R. Jud. Admin. 2.050(b)(3). This administrative plan includes "an administrative organization *1016 capable of effecting the prompt resolution of cases; assignment of judges, other court officers, and executive assistants; control of dockets; regulation and use of courtrooms; and mandatory periodic review of the status of inmates of the county jail." Id. Moreover, the chief judge is responsible for assigning judges to the courts and divisions, and may designate a judge in any court or court division of circuit or county courts as an "administrative judge" of any court or division to assist with the administrative supervision of the court or division. See Fla. R. Jud. Admin. 2.050(b)(4)-(5).
In discussing the importance of the chief judge's administrative duties, this Court has explained:
The position of Chief Judge is especially important, for the Chief Judge serves as both the chief administrative officer and chief judicial officer within the circuit. In this capacity, he or she must work effectively with the judiciary, court employees, and the community at large. In his or her dealings with the public in particular, the Chief Judge is perceived as a prime representative of not only the judiciary but the entire system of justice. The position thus is a highly responsible one, requiring the utmost in sensitivity and discretion in the conduct of those who hold it. The actions of the Chief Judge, both professional and personal, must be consistent with the highest ideals embodied by law.
In re Removal of a Chief Judge, 592 So.2d 671, 672 (Fla.1992) (citation omitted). Indeed, this Court has stressed the importance of the chief judge in ensuring the effective operation of the court system:
This Court recognizes that it is imperative that the court system be managed efficiently and that available judicial time be well utilized. The primary responsibility for this lies in the hands of the respective chief judges.
In re Certificate of Judicial Manpower, 503 So.2d 323, 325 (Fla.1987).
As noted above, the records released by the JQC in this case indicate that the complaints concerning Judge Ward's behavior towards other circuit court judges and judicial assistants were directed to Chief Judge Alvarez because he was chief judge, and thus the records generated by him and received by him were in his capacity as chief judge. He received affidavits from the two judicial assistants that detailed their allegations concerning Judge Ward's conduct. Further, one of Chief Judge Alvarez's employees drafted two memoranda detailing the steps Chief Judge Alvarez took in handling these complaints against Judge Ward. We thus conclude that Chief Judge Alvarez conducted his review of the Judge Ward records "in connection with" the transaction of official business, and that Chief Judge Alvarez intended to "perpetuate, communicate, or formalize knowledge of some type." Shevin, 379 So.2d at 640. Therefore, the Judge Ward records constitute "judicial records" subject to public disclosure absent an applicable exemption. This interpretation is consistent with Acting Chief Judge Fulmer's observation in her dissenting opinion in this case, where she explained: "[A]ny action taken by a chief judge that relates to the day-to-day functioning of the courts constitutes the transaction of official business, whether or not the action taken is expressly listed as a duty in Florida Rule of Judicial Administration 2.050." Media Gen. Convergence, 794 So.2d at 637 (Fulmer, A.C.J., dissenting).

IV.
Having concluded that the Judge Ward records constitute public records, we now *1017 address whether these records are subject to an exemption from disclosure. Rule 2.051(c), adopted in 1992, provides the exemptions applicable to judicial records. Rule 2.051(c) provides in pertinent part:
The following records of the judicial branch and its agencies shall be confidential:
(3)(A) Complaints alleging misconduct against judges, until probable cause is established;
. . . .
(8) All court records presently deemed to be confidential by court rule, including the Rules of Admission to the Bar, by Florida Statutes, by prior case law of the State of Florida, and by the rules of the Judicial Qualifications Commission....

A.
The Second District in this case concluded that the requested records were exempt from disclosure pursuant to rule 2.051(c)(8), which prohibits disclosure of records "deemed to be confidential by court rule." See Media Gen. Convergence, 794 So.2d at 634-35. In particular, the Second District relied on the administrative order this Court promulgated on September 23, 1993, which adopted and incorporated a uniform policy and procedure addressing, among other things, complaints of sexual harassment by or against employees of the State Courts System, and ordered that the procedure be incorporated in the State Courts System personnel rules and regulations. See id. at 635. The "Policy Statement" of the complaint procedure provides that "all complaints of discrimination [are to] be treated seriously and acted upon promptly in accordance with procedures approved and adopted by the Supreme Court or local procedures approved and adopted by the Chief Judge of the district or circuit court." In re Personnel Rules and Regulations, Fla. Admin. Order, (Sept. 23, 1993) (on file with Clerk, Fla. Sup.Ct.) (attached Policy Statement at 2) (emphasis supplied). Moreover, this Court's administrative order provides that complaints made under the Supreme Court Civil Rights Complaint Procedure are deemed confidential. See id. (attached Supreme Court Civil Rights Complaint Procedure at 2). The Thirteenth Judicial Circuit, in accordance with this Court's administrative order, adopted an almost identical procedure for complaints of sexual misconduct by its own personnel. Consequently, the Second District concluded that this Court's 1993 administrative order constitutes a "court rule" granting confidentiality to all sexual harassment investigations conducted in the State's court system. See Media Gen. Convergence, 794 So.2d at 635.
Even if the Supreme Court Civil Rights Complaint Procedures could provide a basis for triggering the exemption from public disclosure under rule 2.051(c)(8), no one involved in this case who could have invoked these procedures or the complaint procedures adopted by the Thirteenth Judicial Circuit attempted to do so. As Acting Chief Judge Fulmer explained in her dissenting opinion:
In this case, those persons who could be protected by the confidentiality provisions have expressly stated that they do not wish to initiate any complaints. Their decision not to invoke the complaint procedures in no way affects the rights of those who do invoke the procedures to receive the protections afforded by the confidentiality provisions.
Id. at 638 (Fulmer, A.C.J., dissenting). Therefore, we conclude that the Supreme Court Civil Rights Complaint Procedures may not form the basis of an exemption from public disclosure under rule 2.051(c)(8) in this case.

*1018 B.
Although we conclude that the Supreme Court Civil Rights Complaint Procedures may not form the basis of an exemption from public disclosure under rule 2.051(c)(8) in this case, we reach a different conclusion regarding the applicability of rule 2.051(c)(3)(A), which exempts from disclosure "complaints alleging misconduct against judges, until probable cause is established." Chief Judge Alvarez contends that the records in this case were exempt under rule 2.051(c)(3)(A) until the JQC found probable cause on March 1, 2000. However, Chief Judge Alvarez concedes that once the JQC found probable cause, he was obligated to release the records in his possession to the petitioners. In contrast, the petitioners contend that because the victims in this case never filed a formal complaint, rule 2.051(c)(3)(A) is inapplicable.
We conclude that rule 2.051(c)(3)(A) is applicable under the circumstances of this case, and that it exempted the Judge Ward records from public disclosure until the JQC found probable cause on March 1, 2000. The plain language of rule 2.051(c)(3)(A) refers only to "complaints," and does not distinguish between "formal" and "informal" complaints. Construing rule 2.051(c)(3)(A) in the manner urged by the petitioners would require this Court to read language into the rule that otherwise does not exist. This we decline to do.
Moreover, we conclude that the plain language of section 2.051(c)(3)(A), as well as the relevant constitutional provisions, dictate that the complaints in this case remained confidential until the JQC determined probable cause. The Florida Constitution confers upon the JQC jurisdiction to investigate and make recommendations to this Court regarding the discipline of judges. See art. V, § 12(a)(1), Fla. Const. Furthermore, article V, section 12(a)(4), of the Florida Constitution expressly provides that JQC proceedings are confidential until the JQC has found probable cause and the investigative panel of the JQC files formal charges with the clerk of this Court. In addition, Florida Judicial Qualifications Commission Rule 23 effectuates this constitutional mandate of confidentiality, extending it to all records received by the JQC before a finding of probable cause. Rule 2.051(c)(8) exempts from public disclosure "[a]ll court records presently deemed to be confidential by ... the rules of the Judicial Qualifications Commission."
Rule 2.051(c)(3)(A) works in conjunction with the constitutional mandate of confidentiality by exempting from disclosure all complaints alleging misconduct by a judge until probable cause is established. Because both the Florida Constitution and rule 2.051(c)(8) specifically address records in the possession of the JQC, we conclude that rule 2.051(c)(3)(A) refers to records other than those in the possession of the JQC. Indeed, whereas rule 2.051(c)(8) covers exemptions for records in the possession of the JQC before probable cause is determined, rule 2.051(c)(3)(A) covers exemptions for records other than those in the possession of the JQC, received or made by the chief judge in connection with a complaint of misconduct against a judge before there is a determination of probable cause.
Although complaints to the JQC can be initiated by any individual, it is appropriate and reasonable that the initial complaints about a judge, especially made by an employee, would be directed to the chief judge prior to any referral to the JQC.[12] *1019 Thus, we conclude that the records associated with the complaints are exempt from disclosure until the JQC determines probable cause.
The petitioners maintain, however, that the records received by Judge Alvarez should have been subject to public disclosure before the JQC began its investigation because, by its own terms, rule 2.051(c)(8) applies only to JQC proceedings. Although we agree that rule 2.051(c)(8) refers only to JQC proceedings, we have concluded that rule 2.051(c)(3)(A) refers to records other than those in the JQC's possession. Indeed, it would be illogical to conclude that the records in this case were subject to public disclosure until the JQC began its investigation, and then became exempt from disclosure after the JQC began its investigation and until it found probable cause. The constitutionally mandated confidentiality of JQC proceedings would be rendered meaningless under such a construction. Therefore, we conclude that when Chief Judge Alvarez received the complaints against Judge Ward, the complaints and the related records became exempt from disclosure. Moreover, these records remained exempt until the JQC determined that probable cause existed. However, once the JQC found probable cause in this case on March 1, 2000, Chief Judge Alvarez was required to turn over the Judge Ward records in his possession to the petitioners.

V.
The Second District did not specifically discuss the content of the second set of records, referred to as the "fraternization records." The petitioners conceded at oral argument before this Court that the request seeking "any correspondence, electronic correspondence, documents or other records made or received by the Chief Judge's Office or the Court Administrator's Office concerning fraternization, romantic relationships or sexual contact between any Hillsborough County Circuit Court or County Court Judge and any personnel assigned to any courthouse located in Hillsborough County" was a "broad request." The petitioners admitted that this request was really an attempt to cover matters that Chief Judge Alvarez was handling regarding the Judge Ward complaint, and does not concern "idle conversation between members of the Court and other personnel." The petitioners also conceded that this request was not seeking to obtain notes, general e-mails, or invitations to social gatherings or lunch dates between two judicial employees. We accept this concession because general emails, notes or invitations regarding social gatherings most likely would not constitute documents made or received in connection with official court business. Of course, it is another matter where, as in the case of the Judge Ward records, the requested records relate to complaints of sexual harassment or sexually inappropriate comments made at the courthouse by a judge to a court employee.
Thus, because the petitioners have conceded that their request was overly broad *1020 and designed to further explore the allegations of sexual harassment by Judge Ward, and because no records were ever transmitted to the Second District for in-camera inspection, we do not decide whether the fraternization records constitute public records, and if so, whether they are otherwise exempt. We decline to review this aspect of the petitioners' request without prejudice to the petitioners' further pursuit of this matter.

VI.
The requests for the records in this case demonstrate a deficiency in the present procedure for public records requests that are overly broad or that seek records claimed to be exempt. The rules currently do not set forth a specific procedure for the appellate courts, who are responsible for review of records requests made of the circuit court, to engage in an in-camera inspection. Therefore, in this case, the requested records were never subject to an in-camera inspection.
Consequently, the petitioners assert that this Court should fashion new procedures for challenging the denial of access to public records. The petitioners contend that, despite the requirement in rule 2.051(d)(1)[13] that this type of challenge be brought as an original action in the district courts, the district courts are not well equipped to oversee the litigation of original actions. Further, the petitioners maintain that the district courts are not capable of overseeing the use of interrogatories, requests for admissions, requests for production, or depositions. Therefore, the petitioners suggest that this Court sua sponte adopt a new procedure for challenging the denial of access to judicial records.
We agree with the petitioners that the current rule does not provide sufficient guidance both to members of the judiciary and to members of the public for resolving disputes concerning access to judicial records. However, we decline to adopt new rules for challenges to denials of judicial records requests on our own motion. Therefore, we refer this issue to the Rules of Judicial Administration Committee[14] to study this issue and provide a recommendation to this Court.

VII
This Court has repeatedly acknowledged the strong public policy in this State that allows members of the public to have access to public records. Indeed, the Florida Constitution demands no less. However, the Florida Constitution also expressly recognizes that proceedings before the JQC are confidential until the JQC finds probable cause. Therefore, this Court must balance these competing constitutional dictates in resolving the dispute in this case.
*1021 This opinion does not seek to shield members of the judiciary from public scrutiny. All we hold today is that when an individual complains to a chief judge about judicial misconduct involving sexual harassment or sexually inappropriate behavior, any records made or received by the chief judge constitute public records. However, when that complaint is sent to the JQC, the complaint and the records associated with the complaint are confidential until the JQC finds probable cause. Once the JQC finds probable cause, the records in the possession of the chief judge are no longer exempt and become fully available to the public.
Accordingly, we answer the first rephrased certified question in the affirmative, and answer the second certified question in the negative. Further, we quash the Second District's decision on the grounds stated in this opinion, and we remand for further proceedings consistent with this opinion.
It is so ordered.
WELLS, PARIENTE, and QUINCE, JJ., and HARDING, Senior Justice, concur.
PARIENTE, J., concurs with an opinion.
ANSTEAD, C.J., LEWIS, J., and SHAW, Senior Justice, concur in result only.
PARIENTE, J., concurring.
Based on the breadth of the question certified by the Second District in this case, I concur in the majority's decision to rephrase and divide the certified question. I also concur in the majority's answer to the rephrased certified questions. However, I write separately to express concerns not addressed by the majority opinion involving the status of public records made or received by the chief judge regarding complaints of misconduct about another judge by a court employee.
Part of the problem with public records concerning members of the judiciary is that although the chief judge may be the recipient of complaints about a judge, the Florida Constitution designates the JQC as the entity charged with investigating complaints regarding violations of the Florida Code of Judicial Conduct. Further, because the JQC may be investigating the same conduct independently (and perhaps unknown to the chief judge), there is a potential uncertainty as to when and under what other circumstances the exemptions from public disclosure could be claimed.
In this case, we know that Chief Judge Alvarez received complaints and other related documents concerning Judge Ward before the JQC began its investigation of Judge Ward and that Chief Judge Alvarez conducted a limited investigation into the complaints by court employees. Although apparently Chief Judge Alvarez was not the source of the referral to the JQC, the JQC did investigate and determine probable cause in this case.
However, an unresolved issue is the status of records made or received by the chief judge if the complaint to the chief judge does not result in a referral to the JQC, so that the JQC never makes a probable cause determination. This could occur under several possible circumstances. For example, the chief judge could receive complaints concerning another judge and simply do nothing in terms of investigation. Alternatively, the chief judge could receive a complaint concerning another judge, conduct an investigation, and conclude that the complaint has no merit or validity. Finally, the chief judge could receive a complaint concerning another judge and determine that the complaint has validity, but decide that the better *1022 course in resolving the situation is to handle the matter internally, without referral to the JQC.
I would conclude that if the chief judge does not initiate an inquiry into the validity of the complaint, then the records made or received by the chief judge would not be exempt from disclosure under rule 2.051(c)(3)(A) or any other rule. Conversely, if the chief judge, upon investigation, determines that the complaint does not have any validity, those records would be exempt under rule 2.051(c)(3)(A). Lastly, if the chief judge determines the complaint has validity and the alleged conduct rises to the level of a violation of the Code of Judicial Conduct, then referral to the JQC is appropriate and the records remain exempt until the JQC issues its probable cause determination. Indeed, canon 3(D)(1) of the Florida Code of Judicial Conduct is instructive and expressly provides: "A judge who receives information or has actual knowledge that substantial likelihood exists that another judge has committed a violation of this Code shall take appropriate action."[15] Therefore, it would seem that a chief judge has an obligation to direct all complaints of sexual misconduct to the JQC whenever he or she concludes that the complaint has validity.[16] Yet, I acknowledge that because of the variety of complaints that might come to the chief judge, the chief judge should have some discretion in handling complaints that fall short of a potential violation of the Code of Judicial Conduct.[17] Accordingly, there are a variety of circumstances in which a complaint may not go beyond the chief judge and the status of these records remains uncertain.
Because the public records issue is intertwined with the independent but parallel responsibilities of the chief judge and the JQC, I concur with this Court's referral of this complex matter to the Conference of Circuit Court Judges for study and recommendations regarding procedures a chief judge should follow when presented with complaints of misconduct regarding another judge. See majority op. at 1018-19 n. 12.
This case also highlights the necessity for rules of procedure to govern in-camera inspections of records claimed to be exempt. Thus, I also concur with the majority's referral to the Rules of Judicial Administration Committee for development of recommended procedures for the handling of public records requests. See majority op. at 1020.
NOTES
[1] The Second District framed the certified question as follows:

UNDER WHAT CIRCUMSTANCES ARE DOCUMENTS REFLECTING SOCIAL, ROMANTIC, OR SEXUAL RELATIONSHIPS OF JUDGES DEEMED TO BE JUDICIAL RECORDS SUBJECT TO PUBLIC DISCLOSURE UNDER FLORIDA RULE OF JUDICIAL PROCEDURE 2.051?
Media Gen. Convergence, 794 So.2d at 636.
[2] Media General Convergence, Inc., no longer exists. WFLA-TV/News Channel 8 is now owned by petitioner Media General Operations, Inc.
[3] Although Chief Judge Alvarez was chief judge of the Thirteenth Judicial Circuit for all pertinent times involved in this case, he retired as a circuit judge on June 30, 2001.
[4] In one case, the complained-of conduct was "unwelcomed e-mail messages of a sexual nature" toward one of the judicial assistants. In the other case, the complained-of conduct involved Judge Ward coming into the other judicial assistant's office on a Friday afternoon wearing shorts, a t-shirt and a baseball cap, and asking if the judicial assistant would join him in drinking beer.
[5] Although this request appears broader than previous requests, for purposes of discussion, the records sought in this request shall be considered part of the Judge Ward records.
[6] Rule 2.051(c)(3)(A) exempts from disclosure "[c]omplaints alleging misconduct against judges, until probable cause is established."
[7] Initially, the petitioners filed the petition for a writ of mandamus in the Thirteenth Judicial Circuit on March 16, 2000. Chief Judge Alvarez moved to dismiss the petition because the trial court lacked jurisdiction under rule 2.051(d)(1), which provides that jurisdiction regarding access to records lies in the court with appellate authority to review the decision of the judge who denied access to the records. However, before the circuit court ruled on Chief Judge Alvarez's motion to dismiss, the petitioners filed the petition for writ of mandamus in the Second District. On August 8, 2000, the circuit court dismissed the petition for lack of jurisdiction.
[8] Article I, section 24(d), of the Florida Constitution provides:

All laws that are in effect on July 1, 1993 that limit public access to records or meetings shall remain in force, and such laws apply to records of the legislative and judicial branches, until they are repealed. Rules of court that are in effect on the date of adoption of this section that limit access to records shall remain in effect until they are repealed.
(Emphasis supplied.) Therefore, any rulecreated exemption had to be in effect prior to July 1, 1993.
[9] In Report of the Supreme Court Workgroup on Public Records, 825 So.2d 889, 896 (Fla. 2002), the Court adopted a slightly modified definition of "judicial records," making a distinction between "court records" and "administrative records." The modified rule defines "administrative records" as "all other records made or received pursuant to court rule, law, or ordinance, or in connection with the transaction of official business by any judicial branch entity." This modification does not affect the issues in this case.
[10] Chapter 119, Florida Statutes (2001), concerns "public records" of agencies, which include "any state, county, district, authority, or municipal officer, department, division, board, bureau, commission, or other separate unit of government created or established by law." § 119.01(1)-(2).
[11] Although the Attorney General's arguments in this proceeding generally mirror the arguments of WFLA and the Tribune, the Attorney General also argues that the Second District erred in analyzing the public records issue under Florida Rule of Judicial Administration 2.051, rather than under the Florida Constitution. Because this Court's definition of "judicial record" contained in the 1995 amendment to rule 2.051 is identical to the definition of "public records" contained in article 1, section 24(a), of the Florida Constitution insofar as both define public records as those records made or received in connection with official business, we reject the Attorney General's argument that the Second District somehow erred in relying upon rule 2.051, rather than article 1, section 24(a), in determining whether the records at issue constituted public records subject to disclosure.
[12] We do not decide the question of whether the records in the chief judge's possession are exempt from disclosure if no JQC investigation is pending, because those facts are not before us. However, because it is unclear as to what procedures a chief judge should follow when presented with complaints of sexual harassment involving a judge, we refer this important matter to the Conference of Circuit Judges for recommended guidelines consistent with this Court's stated concern, as articulated in the policy statement of our complaint procedure, that "all complaints of discrimination [are to] be treated seriously and acted upon promptly in accordance with procedures approved and adopted by the Supreme Court or local procedures approved and adopted by the Chief Judge of the district or circuit court." In re Personnel Rules and Regulations, Fla. Admin. Order (Sept. 23, 1993) (attached Policy Statement at 2).
[13] Rule 2.051(d) provides in full:

(d) Review of Denial of Access Request. Expedited review of denials of access to judicial records or to the records of judicial agencies shall be provided through an action for mandamus, or other appropriate appellate remedy, in the following manner:
(1) Where a judge has denied a request for access to records in the judge's possession or custody, the action shall be filed in the court having appellate jurisdiction to review the decisions of the judge denying access.
(2) All other actions under this rule shall be filed in the circuit court of the circuit in which such denial of access occurs.
Requests and responses to requests for access to public records under this rule shall be made in a reasonable manner.
[14] We suggest that the Rules of Judicial Administration Committee consult with the former members of the Supreme Court Public Records Workgroup regarding this issue.
[15] The commentary to this rule explains:

Appropriate action may include direct communication with the judge or lawyer who has committed the violation, other direct action if available, or reporting the violation to the appropriate authority or other agency. If the conduct is minor, the Canon allows a judge to address the problem solely by direct communication with the offender. A judge having knowledge, however, that another judge has committed a violation of this Code that raises a substantial question as to that other judge's fitness for office ... is required under this Canon to inform the appropriate authority. While worded differently, this Code provision has the identical purpose as the related Model Code provisions.
(Emphasis supplied.)
[16] Further complicating the public records procedure is the fact that although this Court has adopted a uniform policy and procedure addressing, among other things, complaints of sexual harassment by or against employees of the State Courts System, it is not clear whether this procedure applies to complaints of sexual harassment against judges.
[17] Further complicating the scenario is the fact that the two complainants in this case specifically requested that Chief Judge Alvarez not refer their complaints to the JQC.